UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

NOELL CRANE SYSTEMS GMBH,

        Plaintiff,

v.                                Civil Action No. 2:09cv338

NOELL CRANE AND SERVICE, INC.,

        Defendant.

**CONSOLIDATED MEMORANDUM IN OPPOSITION TO
NOELL CRANE SYSTEMS GMBH'S MOTION FOR
PARTIAL SUMMARY JUDGMENT OR ALTERNATIVELY
FOR PRELIMINARY INJUNCTION and IN SUPPORT OF
<u>NCSI'S MOTION TO DISMISS or ABSTAIN</u>**

Noell Crane and Service, Inc. ("NCSI"), by counsel, for its Consolidated Memorandum in Opposition to Plaintiff, Noell Crane Systems, GMBH's ("Noell Crane") Motion for Partial Summary Judgment or Alternatively for Preliminary Injunction and in Support of NCSI's Motion to Dismiss or Abstain, states as follows:

## <u>INTRODUCTION</u>

Noell Crane's Motion seeks the Court's immediate intervention in a pending proceeding in California state court where NCSI's cross-claim against Noell Crane for indemnity is set to be tried on November 2, 2009.   But NCSI filed the cross-claim in December of <u>2007</u> – approximately nineteen months before Noell Crane filed this action on July 22, 2009.   Noell Crane's inexplicable delay in seeking relief from this Court is directly contrary to its current demand for immediate action.

Indeed, Noell Crane initiated summary judgment proceedings in the California state court seeking the exact same relief it seeks here (i.e., dismissal of the cross-complaint based on the terms of the Full and Final Release of All Claims and Settlement Agreement) ("hereinafter "Settlement Agreement") on October 31, 2008.  Following full discovery and briefing it initiated on the motion, Noell Crane's motion was scheduled to be heard by the California state court on September 3, 2009, before the hearing was withdrawn, without explanation, by Noell Crane's counsel on August 26, 2009.   Final trial on the merits of NCSI's indemnification claim is scheduled for November 2, 2009.

Noell Crane's delay, standing alone, should convince this Court to deny the immediate relief Noell Crane seeks.  And, combined with the discovery conducted in the California action and other relevant factors, it should lead this Court to grant NCSI's Motion to Dismiss or Abstain and defer a ruling on these issues to the California court where these matters have been pending for months.

If the Court decides to review the merits of the release issue, it should still deny the relief Noell Crane seeks because NCSI's indemnity claim that Noell Crane seeks to preclude did not exist at the time the parties signed the Settlement Agreement.  In a nutshell, Noell Crane and NCSI settled a prior case that was pending in this Court in 2005-06.  The release, which Noell Crane argues was so broad that it covered every conceivable dispute between the parties, was executed on or about March 28, 2006.  At that time, a plaintiff in a California state action had already filed a personal injury suit against Noell Crane for injuries resulting from an incident with a crane.

Importantly, however, as of March 28, 2006, the plaintiff in the California action had not yet named NCSI as a defendant – in fact, the undisputed evidence is that NCSI did not even

know that the suit had been filed when it signed the Settlement Agreement. Virginia law, which controls the indemnity claim at issue, unambiguously provides that an indemnity claim does not accrue until the indemnitee (in this case, NCSI) pays money or performs an obligation that is covered by the indemnity. Here, since NCSI had not even been sued as of March 28, 2006 it had not performed or paid and thus the indemnity claim did not even exist at that time. For this additional reason, the Court should deny Noell Crane's Motion.

But the Court should deny the Motion for yet another reason, namely that Noell Crane knew about the California suit as of March 28, 2006 yet never told NCSI about it. Under the circumstances, this omission is strong circumstantial evidence that Noell Crane was attempting to manipulate the situation to avoid a future indemnity claim that it saw on the horizon (but that NCSI did not know existed).

Furthermore, there are genuine issues of material fact – for example, significant differences in the way the parties recall the settlement negotiations. There are also issues of fact regarding whether Noell Crane intended to waive the jurisdictional clause in the Settlement Agreement and Noell Crane's duty to disclose the existence of the California suit to NCSI during the negotiations over the agreement, all of which is further discussed below.

Finally, Noell Crane cannot clear the threshold requirements for injunctive relief. It is not threatened with irreparable harm, nor is it likely to succeed on the merits. Moreover, its lengthy delay in seeking such relief is reason enough, standing alone, to deny it.

In sum, the Court should deny the Motion because Noell Crane has waived its right to invoke this Court's jurisdiction by its initiation and full participation in the parallel pending California state action, and because Noell Crane's Motion is both procedurally improper and substantively unsupported. Rather, the Court should grant NCSI's Motion to Dismiss or Abstain.

## STATEMENT OF FACTS

In its recitation of facts, Noell Crane omits certain critical information that this Court must consider in analyzing the Motion for Summary Judgment/Preliminary Injunction.

1.      The Roybal California indemnification claim grew out of an accident that occurred on May 17, 2005, in which George Roybal was injured.  George Roybal and his wife filed a lawsuit in California state court on February 14, 2006.  That suit specifically named Noell Crane, among others, as a defendant.

2.      Significantly, NCSI was <u>not</u> named as a defendant in the lawsuit filed on February 14, 2006.  Instead, the Roybals named as defendants several "John Does," which apparently is a device recognized under California law whereby a plaintiff can preserve certain claims against as yet unknown defendants.[1]   As Noell Crane admits in its Memorandum, NCSI was not actually named as a defendant in the Roybal suit until at least May 18, 2006.

3.      Thus, because it had not been named as a defendant in the initial Roybal lawsuit and because no one had informed it of the proceedings, NCSI did not know of the pending California Roybal litigation as of March 28, 2006.  (Manfred Kohler Decl., ¶ 3).  In fact, NCSI did not know of the Roybal suit until June 2006, when the Roybal suit was served on NCSI.  (Kohler Dep., pp. 80-81).[2]

4.      By contrast, Noell Crane had actual notice of the California Roybal proceeding at least by December 2005, which is the date when Noell Crane, with its insurer Zurich American

---

[1] Noell Crane attempts to explain its failure to disclose the California Roybal litigation to NCSI before the Settlement Agreement was executed by claiming California state procedural law allows the subsequently identified Doe defendant to be "deemed" to be in the lawsuit, as a party, as of the original date the Complaint was filed. (Memo., p. 12).  However, this California state procedural law governs, for limitations and other purposes, the date the plaintiff's suit is "deemed" to bring the party into the lawsuit.  It in no way affects Noell Crane's failure to disclose information to NCSI.  In short, Noell Crane cannot take advantage of the California state procedural law rule to immunize its failure to disclose information pertinent to NCSI's execution of the Settlement Agreement.

[2] References to the Manfred Kohler deposition are to the deposition taken in the Roybal litigation, which Kohler has verified is true and accurate in his declaration filed in this case as **Exhibit 1** to this Memorandum.  Kohler's deposition excerpts are attached as an exhibit to Kohler's declaration.

Insurance Company, retained California counsel to represent it in the Roybal suit. (Declaration of James R. Rosen, Esq., ¶¶ 22-23).[3]  Indeed, in January 2006 Noell Crane's counsel even wrote a letter to Roybal's counsel addressing certain issues related to the suit (the letter is attached as Exhibit O to Rosen's declaration). (Id.)  By letter dated February 17, 2006, Roybal's counsel confirmed service on Noell Crane with Noell Crane's California counsel (this letter is attached as Exhibit P to Rosen's declaration). (Id.)

5.      Notwithstanding that as of February 17, 2006, Noell Crane knew of the Roybal suit, evidently had notified its insurer (Zurich) of the Roybal suit, had retained California counsel to represent it in the Roybal suit, and had been served with the Roybal suit, Noell Crane never informed NCSI of the Roybal accident or lawsuit prior to the time that the Settlement Agreement was executed. (Kohler Decl., ¶¶ 2, 3); (Frank Hegan Decl., ¶ 3, attached as **Exhibit 3**).

6.      After being served in June 2006 and filing its responsive pleadings, NCSI, by its California counsel James R. Rosen, Esq., attended the deposition of George Roybal on October 31, 2006.  During this deposition, Rosen discussed with Noell Crane's counsel NCSI's view that Noell Crane was obligated to indemnify NCSI for the Roybal suit. (Rosen Decl., ¶ 11).  Shortly after the Roybal deposition, Rosen wrote Noell Crane's counsel a letter addressing indemnity. (Rosen Decl., ¶ 12, Ex. F).  Rosen and Noell Crane's counsel exchanged further communications addressing indemnity on March 8, 2007 and April 9, 2007, respectively. (Rosen Decl., ¶¶ 14-15, Exs. G, H).

---

[3] References to the "Rosen declaration" are to the declaration filed by Rosen in opposition to Noell Crane's summary judgment motion filed in the California suit, which seeks the same relief as this action, namely dismissal of the cross-complaint under the terms of the Settlement Agreement.  Rosen has also signed a declaration in this case ("Rosen Virginia Declaration") confirming the accuracy of his declaration filed in the California suit, which is attached as **Exhibit 2** to this Memorandum.  Rosen's California declaration and the exhibits thereto are themselves attached as exhibits to the Rosen Virginia Declaration.

7.     On December 28, 2007, NCSI filed its cross complaint against Noell Crane. (Compl., ¶ 14).   The cross complaint included NCSI's claim for indemnification based on the terms of a contract executed by the parties on July 27 and 28, 2000, which included an indemnification provision in paragraph 14 of that document ("the 2000 indemnification contract").   (Rosen Decl., ¶ 4, Ex. B).   The 2000 indemnification contract also included a provision – paragraph 26 – stating that the contract should be construed in accordance with and, performance governed by, Virginia law.   (Id.)

8.     On October 9, 2008, NCSI filed its first amended cross complaint in the Roybal action.   (Compl., ¶ 14).

9.     On October 31, <u>2008,</u> Noell Crane filed a motion for summary judgment in the Roybal action seeking to dismiss that claim under the terms of the Settlement Agreement entered into in the <u>Fantuzzi</u> matter.   (Rosen Decl., ¶ 16).

10.     In pursuing its defense to the indemnity cross complaint, Noell Crane also conducted discovery in the Roybal action.   It served requests for production of documents and came to Virginia to depose NCSI's principals, Manfred Kohler and Frank Hegan.   (Rosen Virginia Decl., ¶¶ 3-5).

11.     On June 16, 2009 (i.e., almost three years after being notified of NCSI's intent to seek indemnification from Noell Crane, approximately eighteen months after NCSI filed its original cross complaint in the Roybal action, and almost eight months after filing its motion for summary judgment seeking to dismiss the cross complaint because of the <u>Fantuzzi</u> Settlement Agreement), Noell Crane notified NCSI in writing of the alleged breach by NCSI of the <u>Fantuzzi</u> agreement, which was a condition precedent under that agreement to filing a suit.

12.     On July 22, 2009, Noell Crane filed this suit and on August 17, 2009, it filed this Motion.

13.     In addition, Noell Crane has sold to NCSI, for resale within the United States, numerous pieces of equipment, including cranes, that are covered by indemnity agreements similar to the one at issue in this case.  These cranes and other pieces of equipment remain in use and have significant useful life remaining.  NCSI never intended to waive any indemnity claims that it might have for any of these pieces of equipment, nor did it intend to waive its indemnity claim against Noell Crane in the Roybal litigation.  (Kohler Decl., ¶¶ 2, 4; Kohler Dep., pp. 413-15); (Hegan Decl., ¶¶ 2, 4; Hegan Dep., pp. 137-38).

**STATEMENT OF MATERIAL FACTS AS TO
WHICH THERE IS A GENUINE ISSUE**

1.     While NCSI agrees that the Roybals filed <u>Roybal v. American President Lines, Ltd.</u>, Case no. NC038082, on February 14, 2006 in the Los Angeles Superior Court, NCSI disputes that the suit filed on February 14, 2006 named NCSI as a defendant.  As is readily apparent from a review of the pleading, NCSI is not named as a defendant.  (Aghabeg Aff., Ex. A).  Rather, the Roybals named "Does 1 – 50."  (<u>Id.</u>)   It was not until May 18, 2006 that the Roybals amended their lawsuit specifically to name NCSI as a defendant.  (Aghabeg Aff., Ex. B).

2.     NCSI does not dispute that the "operative" cross-complaint currently at issue in the California state court action is the amended cross-complaint that was filed in October 2008.  However, NCSI disputes that this was the first time it raised indemnity with Noell Crane.  Rather, NCSI first raised indemnity on October 31, 200*6* during a conversation between NCSI's counsel and Noell Crane's counsel that took place during George Roybal's deposition.  (Rosen Decl., ¶¶ 10-11)  Shortly after that conversation, on November 7, 2006 NCSI's counsel sent a

letter to Noell Crane's counsel confirming NCSI's intent to seek indemnity from Noell Crane and requesting that Noell Crane provide certain documents related to the indemnity claim. (Rosen Decl., ¶ 12, Ex. F).  In March 2007, NCSI's counsel sent another letter to Noell Crane's counsel setting forth in detail NCSI's indemnity claim.  (Rosen Decl., ¶ 14, Ex. G).   After further discussions proved fruitless in convincing Noell Crane to accept its indemnity obligations, NCSI filed its cross-complaint on December 28, 2007.  (Compl., ¶ 14).   It then amended the cross-complaint on October 9, 2008.  (Id.)  On October 31, 2008, Noell Crane filed a motion for summary judgment seeking to dismiss the cross-complaint because it allegedly was barred by the terms of the Settlement Agreement executed in connection with the Fantuzzi action.  (Rosen Decl., ¶ 16).

   3.    NCSI does not dispute the authenticity or content of the Settlement Agreement that arose out of the Fantuzzi litigation.   NCSI, however, does dispute that the Settlement Agreement covers the indemnity cross-complaint for the reasons discussed below.   NCSI also disputes that the Settlement Agreement was "heavily negotiated" by counsel.  (Declaration of Mary Jane Hall, ¶ 2, attached as **Exhibit 4**).  The Settlement Agreement was drafted by Noell Crane's lawyers. (Id.)  While NCSI's counsel proposed several changes, the entire negotiation was completed within the span of a few days.  (Kohler Decl., ¶ 5).

   4.    NCSI disputes the statement by Noell Crane that there are no genuine issues of material fact in this matter.  The fact is that Noell Crane knew of the Roybal action at least by December 2005, well before the March 2006 Agreement.  As of the date of the Agreement, NCSI did not know of the existence of the Roybal action or the fact that Mr. Roybal's accident had occurred.   As of the date of the Agreement, NCSI had not incurred any fees, costs or expenses defending the Roybal action and, in fact, was not even named as a party until May

2006, two months after the Agreement was executed, and was not served with the suit until June 2006.  (Kohler Decl., ¶ 3).  Because NCSI did not know of the Roybal action and because it had not incurred any fees, costs or expenses in connection with that action, no indemnification claim had accrued as of March 28, 2006.

     5.     NCSI's principals who negotiated and executed the Settlement Agreement never intended to release NCSI's claim for indemnification as set forth in the Roybal cross complaint, nor did they discuss with Noell Crane or its counsel the Settlement Agreement as extending to such indemnification claims outside the <u>Fantuzzi</u> litigation.  (Kohler Decl., ¶¶ 2, 4, 5; Hegan Decl., ¶¶ 2, 4, 5; M.J. Hall Decl.,  ¶¶ 3, 4).

## ARGUMENT

**I.     <u>Noell Crane Has Waived Its Right to Proceed in this Court, and this Court Should Abstain From Hearing This Matter.</u>**

By waiting nineteen months after NCSI filed its initial cross-claim against Noell Crane in the California indemnification action and by affirmatively pursuing its own motion for summary judgment on this identical issue to the brink of decision by the California court, Noell Crane has waived its right to invoke this Court's jurisdiction to prevent the California court from reaching a final decision on the merits of the indemnification claim at the trial imminently scheduled for November 2, 2009.  Therefore, this Court should abstain from hearing this matter in deference to the pending California state action raising the precise issues raised in this case.

In fact, the very issue Noell Crane presents to this Court (that the Settlement Agreement bars the indemnity claim) was scheduled to be heard and resolved by the California court on September 3, 2009 – the date set by Noell Crane for a hearing on its motion for summary judgment on NCSI's indemnity cross-complaint – until Noell Crane precipitously withdrew its hearing notice, on August 26, 2009, one week before the scheduled hearing.

Typically, "[a] forum selection clause is presumptively valid and enforceable unless the challenger can 'clearly show' that enforcement would be 'unreasonable under the circumstances.'" Hipage Co. v. Access2Go, Inc., 589 F. Supp. 2d 602, 612 (E.D. Va. 2008) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 15 (1972).)  The clause is unreasonable if (1) it was induced by fraud or overreaching; (2) the complaining party will be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene a strong public policy of the forum state. Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996).

Here, however, Noell Crane's actions are not typical, nor is the forum selection clause at issue a typical venue clause.  First, Noell Crane has pursued the identical issue raised here in the California action since at least October 2008 when it filed its first motion for summary judgment in the Roybal suit.   And since Noell Crane took the depositions of NCSI's witnesses related to the issue of release prior to filing its motion, it actually has been preparing this defense since before October 2008.  Second, rather than simply state that venue for disputes involving the Settlement Agreement should be in this Court, the "forum selection clause" at issue actually states that this Court retains jurisdiction over the Fantuzzi matter for purposes of enforcing the Settlement Agreement.

Thus, the question is not the typical issue of whether the "forum selection clause" can be enforced, but rather whether Noell Crane's actions in pursuing the same issues in California amount to a waiver and, given that this Court retained jurisdiction to enforce the Release and Settlement Agreement, whether it can abstain from hearing Noell Crane's complaint.  The answer to both questions is yes.

**A.      Noell Crane Waived its Right to Obtain Relief from this Court under the Settlement Agreement.**

Under Virginia law, a party waives a contractual right where it has basic knowledge of the right and exhibits an intent to relinquish the right.  Stanley's Cafeteria, Inc. v. Abramson, 226 Va. 68, 306 S.E.2d 870, 873 (1983).  The burden is on the party seeking to establish the waiver to establish its elements by clear, precise and unequivocal evidence.  Id. See also Woods v. Christensen Shipyards, Ltd., 2005 WL 5654643, No. 04-61432-CIV (S.D. Fla. Sept. 23, 2005) (addressing waiver of enforcement of forum selection clause under common law principles); Triple Quest, Inc. v. Cleveland Gear Co., 627 N.W.2d 379 (N.D. 2001) (addressing waiver of forum selection clause under common law principles and remanding case because genuine issue of material fact existed regarding whether waiver had occurred).

Here, Noell Crane indisputably knew of the clause in the Settlement Agreement allowing this Court to address issues related to the Settlement Agreement.  The only question, then, is whether Noell Crane also intended to relinquish the right to enforce the clause.  The undisputed and unequivocal evidence is that it did.  Noell Crane pursued a line of defense in the California action for months that focused on barring the indemnity cross complaint based on the terms of the Settlement Agreement.  In connection with that defense it took discovery, including coming to Virginia to take the depositions of the NCSI principals who had been involved in the settlement of the Fantuzzi litigation, Manfred Kohler and Frank Hegan.  Noell Crane filed motions for summary judgment, fully briefed them, and set them for hearing, only taking its most current motion off the docket after filing this Motion for Summary Judgment.[4]

---

[4] Nor is this a case where Noell Crane simply filed a compulsory counterclaim or took some other similar action mandated or necessary under the circumstances.  See, e.g., Queen Noor, Inc. v. McGinn, 578 F. Supp. 218 (S.D. Tex. 1984) (collecting cases where parties were found not to have waived forum selection clauses by filing pleadings such as counterclaims, cross-claims or third-party complaints).  Noell Crane could have filed its suit in Virginia as early as November of 2006, when it first learned that NCSI intended to assert its indemnity rights against

In sum, the Court should grant NCSI's Motion to Dismiss or Abstain.  Even should it decide not to grant NCSI's Motion, however, at the very least, there is a genuine issue of material fact regarding whether Noell Crane waived its right to rely on the clause in the Settlement Agreement allowing this Court to resolve issues arising under the Settlement Agreement, and for that additional reason the Court should deny Noell Crane's Motion for Summary Judgment/Preliminary Injunction.

### B.    The Court Can and Should Abstain from Exercising Jurisdiction.

In addition, even where it otherwise has jurisdiction, a federal court may dismiss an action on the sole ground that there is a parallel action pending in state court in which the controversy between the parties can be resolved.  Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18 (1976) (citing Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952)); Columbia Plaza Corp. v. Security Nat'l Bank, 525 F.2d 620 (D.C. Cir. 1975).

While "[n]o one factor is necessarily determinative [in deciding whether to abstain]; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required."  Colorado River Water Conservation Dist., 424 U.S. at 818-19 (citing Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936)).  Factors the Court should consider include, (1) the assumption by either court of jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) *the order in which the courts obtained jurisdiction and the progress achieved in each action*; (5) the source of applicable law; and (6) the adequacy of the state proceeding to protect the parties' rights. Chase Brexton Health Services, Inc. v. Maryland, 411

---

Noell Crane.  Instead, it chose to deal with the issue in the California courts until at least June of 2009, when it sent the mandatory notice under the Settlement Agreement, and subsequently filed this action on July 22, 2009.

F.3d 457, 462-66 (4th Cir. 2005) (emphasis supplied); <u>Colorado River Water Conservation Dist.</u>, 424 U.S. at 818 (citing <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501 (1947)); <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S. 491, 495 (1942); <u>Pacific Live Stock Co. v. Oregon Water Bd.</u>, 241 U.S. 440, 447 (1916).  With respect to element number 4, the question is the progress of each suit, not the bare order of filing.   <u>Jackson Hewitt, Inc. v. J2 Financial Services, Inc.</u>, 901 F. Supp. 1061, 1067 (E.D. Va. 1995) (holding that priority should be measured "in terms of how much progress has been made in the two actions") (citation omitted).  Further, the federal court may consider forum shopping as a factor in determining whether to defer to a state court with concurrent jurisdiction. <u>Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Cooperatives, Inc.</u>, 48 F.3d 294, 299 (8th Cir. 1995).

In this case, these factors, when considered as a whole, weigh heavily in favor of abstention.   There is no question that the issues in each case are identical.   This identity "militates in favor of abstention." <u>Matiyasic v. Access Controls, Inc.</u>, 1993 WL 100054, *1 (4th Cir. Apr. 6, 1993) (unpublished) (citing <u>New Beckley Mining Corp. v. International Union, UMWA</u>, 946 F.2d 1072, 1074 (4th Cir. 1991)).  Also, in abstaining from this case, the Court will avoid piecemeal litigation.  As discussed above, the California suit has seen significantly more progress than this one has.  And there is no question that the California state court proceeding is adequate to protect the parties' rights.

Indeed, in a similar context – i.e., a circumstance where the state case had progressed significantly farther than the federal court action – the Fourth Circuit in <u>Matiyasic</u> affirmed a district court's decision to abstain where identical cases were pending in both state and federal

court.  In that case, discovery in the state action had proceeded for over six months while the federal action remained dormant.[5]

For these reasons, this Court should deny Noell Crane's Motion and, instead, grant NCSI's Motion to Dismiss or Abstain in favor of the California proceeding.

II.     **The Court Should Deny the Motion for Summary Judgment**

A.     **Noell Crane's Motion for Summary Judgment Should be Deferred as Premature.**

Noell Crane filed this action on July 22, 2009.  NCSI's responsive pleadings were not due until September 8, 2009, the same day this Memorandum in Opposition is being filed.  In this action, there has been no discovery and neither the scheduling conference nor the initial pretrial conference has been held.

While a party is not absolutely precluded from receiving summary judgment at such an early stage of the proceedings, it is a highly disfavored remedy.  Rule 56 of the Federal Rules of Civil Procedure contemplates that a defending party, such as NCSI, is entitled to use the discovery procedures permitted by the Federal Rules of Civil Procedure to support its position that material disputed facts require the denial of the Motion for Summary Judgment.  See Fed. R. C. P. 56.  This result is particularly appropriate where, as here, Noell Crane relies heavily on external declarations, and discovery materials, from the California action, which are strongly disputed by NCSI.

---

[5] In addition, Noell Crane may have waived its right to rely on the jurisdictional clause of the Settlement Agreement by failing to raise it with the California court.  Courts have long held that "[b]eing a privilege, … [the election of venue] may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct…."  Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168 (1939) (citing Commercial Cas. Ins. Co. v. Consol. Stone Co., 278 U.S. 177, 179 (1929).  A defense of improper venue, including venue established by agreement, is waived if not timely raised in a responsive pleading or an amendment thereof.  Fed. R. Civ. P.12(h).  Longwall-Assocs., Inc. v. Wolfgang Preinfalk GmbH, No. 1:00CV86, 2001 U.S. Dist LEXIS 8113 at *8 (W.D. Va. June 12, 2001) (citing Frietsch v. Refco, Inc., 56 F.3d 825, 830 (7th Cir. 1995)).

In this case, NCSI has pointed out above the extent to which Noell Crane omitted key facts in its memorandum in support and has further described those instances where NCSI strongly disagrees with Noell Crane's characterization of the facts.

For example, Noell Crane supports its motions with declarations from attorneys representing Noell Crane in the <u>Fantuzzi</u> litigation that the Settlement Agreement was intended to encompass all claims of any type or nature. (Memo., p. 13). NCSI strongly disagrees and has provided the Court the declaration of Mary Jane Hall stating that the release of non-Fantuzzi indemnification claims, like the Roybal indemnification claim, was never discussed by NCSI and Noell Crane. (Hall Decl. ¶ 4). The Roybal indemnification claim, or indeed any other pending or possible indemnification claims arising from the previous sale of equipment by Noell Crane to NCSI, was never intended to be released by the Settlement Agreement. In addition, as noted above NCSI's principals have testified under oath that they did not know about the Roybal incident or suit and never intended to release any indemnification claim. Standing alone, these disputed factual issues preclude the grant of summary judgment.

**B.     NCSI Could Not Have Released its Indemnification Claim, Which Did Not Exist as of the Date the <u>Fantuzzi</u> Agreement Was Signed.**

Perhaps more importantly, however, NCSI could not have released its Roybal indemnification claim against Noell Crane on March 28, 2006, because the Roybal indemnification claim did not exist as of that date.

Courts and commentators agree that, unless specifically provided for in the settlement contract, a release does not apply to future claims, including claims that have not yet accrued. <u>Hardee's Food Systems, Inc. v. Oreel</u>, 32 F. Supp. 2d 342, 345 (E.D.N.C. 1998) (finding that release did not bar claims that had not accrued at time of execution of release); <u>Scheck v. Burger King Corp.</u>, 756 F. Supp. 543, 547 (S.D. Fla. 1991), overruled on other grounds, <u>Burger King</u>

Corp. v. Weaver, 169 F.3d 1310 (11th Cir. 1999) ("[A] general release cannot be held to bar a claim which did not exist when it was signed."); Travis v. Knob Creek, Inc., 362 S.E.2d 277, 279 (N.C. 1987) (expressing the "general rule" that matters that accrue after the release are not barred by the release); 76 C.J.S. Release § 76 ("[D]emands subsequently … accruing, are not as a rule discharged by the release unless expressly embraced therein or falling within the fair import of the terms employed.").

In addition, Virginia law (which applies in this case because paragraph 26 of the indemnification contract expressly provides that Virginia law applies) is crystal clear that a cause of action for indemnification accrues only when "the indemnitee has paid or discharged the obligation."  Va. Code Ann. § 8.01-249(5); Lone Mountain Processing, Inc. v. Bowser Morner, Inc., 94 Fed. Appx. 149, 2004 WL 759486 (4th Cir. 2004) (unpublished) ("[A] cause of action for … indemnification accrues when the … indemnitee has paid or discharged the obligation.") (citation omitted).  Thus, under Virginia law "the accrual of a cause of action for indemnity … is better linked to a time at which the indemnitee is injured, *not* the time at which the original plaintiff was injured."  Lone Mountain, 94 Fed. Appx. at 158 (citations omitted) (emphasis supplied).

At the time the Fantuzzi settlement agreement and release was signed, on March 28, 2006, releasing claims through and including that date, NCSI was not even a party to the Roybal lawsuit and did not even know it existed.  NCSI had not made any indemnification claim on Noell Crane and had not "paid or discharged" any obligation in connection with the Roybal action.  In other words, the contractual indemnification claim by NCSI against Noell Crane had not yet accrued as of March 28, 2006, that claim did not exist and therefore that claim could not have been released.

**C.   Noell Crane Knew of the Roybal Suit Prior to March 28, 2006 But Did Not Inform NCSI of Its Existence.**

The Court also should deny summary judgment because as of March 28, 2006, the date the Settlement Agreement was signed, Noell Crane knew about the Roybal lawsuit (and, at this stage, it is a fair inference that Noell Crane knew that NCSI did not know anything about it) and yet never mentioned it to NCSI.  This gamesmanship, even in the context of an arms-length negotiation, is sufficient for this Court to preclude Noell Crane from relying on the Settlement Agreement to bar the indemnification claim.

Under Virginia law, "concealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." Bank of Montreal v. Signet, 193 F.3d 818, 826 (4th Cir. 1999) (citation omitted).  Silence is not actionable in the absence of a duty to disclose, and often in an arms-length transaction no such duty arises.  Id. at 829 (citation omitted).  Importantly, however, such a duty may arise "if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist …"  Id. (citations omitted) (finding that a jury could have concluded that one bank owed another the duty to disclose a material fact in an arms-length transaction).  See also Spence v. Griffin, 236 Va. 21, 372 S.E.2d 595, 599 (1988) ("A contracting party's willful nondisclosure of a material fact that he knows is unknown to the other party may evince an intent to practice actual fraud.")

Here, the evidence is that Noell Crane knew about the Roybal suit and, in fact, had retained counsel and been served prior to the time the Settlement Agreement was executed.  Yet the evidence at this stage is that Noell Crane never disclosed the existence of this action to NCSI, which did not learn of it until months later, after the Roybal suit was amended to specifically name NCSI and after NCSI was served with the complaint.

Assuming, as Noell Crane does, that the Roybal indemnity claim is covered by the Settlement Agreement (which, as discussed above, is not the case) the fact of the accident and suit certainly was material to the negotiations over the Settlement Agreement.  Furthermore, the circumstantial evidence, at least at this stage, is that Noell Crane knew that NCSI was acting on the presumption that the fact did not exist.  Under these circumstances, Noell Crane's failure to disclose the existence of the Roybal litigation amounted to fraud.  At the very least, there is a genuine issue of material fact regarding whether Noell Crane had a duty to disclose the existence of the suit.[6]

In sum, for this additional reason, the Court should deny the Motion for Summary Judgment or, in the alternative, Preliminary Injunction.

### III.    This Court Should Deny Noell Crane's Requested Preliminary Injunction, as it Fails to Satisfy any of the Prerequisite Factors.

#### A.    Standard for Injunctive Relief.

The United States Court of Appeals for the Fourth Circuit consistently has held that a preliminary injunction is an "extraordinary remed[y]" which involves "the exercise of far-reaching power" and should be granted "only sparingly and in limited circumstances." Microstrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001); Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991).  The Fourth Circuit also has cautioned that this extraordinary remedy should be granted "only if the moving party clearly establishes entitlement to the relief sought."  Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp., 17 F.3d 691, 693 (4th Cir. 1994).

---

[6] Furthermore, while the Settlement Agreement states that claims "known or unknown" are released, the fair interpretation of that phrase is that it describes claims "known or unknown" to *both* parties.  In other words, it does not include claims "known" to one party but "unknown" to the other.

The purpose of a preliminary injunction motion is to maintain the status quo until the underlying issues can be resolved. See Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc., 550 F.2d 189, 195 (4th Cir. 1977) ("The controlling reason for the existence of the judicial power to issue a temporary injunction is that the court may thereby prevent such a change in the relations and conditions of persons and property as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated."); Sinclair Refining Co. v. Midland Oil Co., 55 F.2d 42, 45 (4th Cir. 1932) ("The purpose of the preliminary injunction is to preserve the status quo until the rights of the parties can be fairly and fully investigated and determined by strictly legal proofs and according to the principles of equity.").

Both the Fourth Circuit and this Court have differentiated between preliminary injunctive relief which maintains the status quo and mandatory relief which disturbs the status quo, "especially where that relief would in effect operate to decide the merits of the case in favor of the moving party." Smith v. Newport News Shipbuilding Health Plan, Inc., 148 F. Supp. 2d 637, 646 (E.D. Va. 2001) (Friedman, J.) When the moving party is seeking a mandatory injunction, as the plaintiff is doing here, defendants bear a "heavier burden". Id.; Simpson v. City of Hampton, 919 F. Supp. 212, 215 (E.D. Va. 1996) (Morgan, J.) ("a mandatory injunction…is an extraordinary remedy….For these reasons, Plaintiffs have a considerable burden to meet in order to obtain a preliminary injunction."). A mandatory preliminary injunction should only be granted "in those circumstances when the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980) (Hoffman, J.). Furthermore, the courts will not permit a preliminary injunction "to secure a piecemeal trial." Id.

**B.      Noell Crane States No Irreparable Harm.**

Noell Crane claims the "tens of thousands of dollar" in additional legal fees it will incur prior to the scheduled November 2, 2009 trial of the California indemnification action constitutes irreparable injury.  (Memo. ¶ 20).    However, most of those fees were spent before Noell Crane ever filed this action on July 22, 2009, or before it moved for preliminary injunctive relief on August 17, 2009.  (Why, given the alleged immediacy of its damage, Noell Crane did not file its motion for preliminary injunction on July 22, 2009, but rather waited 26 days later, until August 17, 2009, to file its preliminary injunction motion, is never addressed or explained by Noell Crane).  Moreover, by the time this motion has been fully briefed and ruled upon by the Court, Noell Crane will already have expended the bulk of the attorney's fees necessary to prepare for the November 2, 2009 indemnification trial.  The modest amount of additional attorneys' fees that would be incurred after this Court has ruled would be minor monetary damages, which are never a sufficient basis for injunctive relief.  Hughes Network Systems, Inc. v. Terdigital Communications Corp., 17 F.3d 691, 694 (4th Cir. 1994) ("Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable.")

Incredibly, Noell Crane also asserts irreparable harm if the California state court rules on Noell Crane's pending motion for summary judgment on NCSI's indemnification action, instead of this Court.  However, for at least eight full months, Noell Crane has been seeking exactly that relief from the California court.  Indeed, Noell Crane filed a motion for summary judgment on October 31, 2008 and its affirmative defenses as early as December 2008 claiming the Settlement Agreement barred NCSI's cross-claim.  Noell Crane thereafter vigorously pursued discovery on that defense and had fully briefed its motion for summary judgment on NCSI's

cross-claim, based on such discovery, in the California action. NCSI has been required to expend substantial resources in defending that claim in the California action, including defending depositions in Virginia.

Indeed, Noell Crane originally set its summary judgment motion for hearing in early 2009, ultimately rescheduled to September 3, 2009, only to be withdrawn (by Noell Crane), on August 26, 2009, seven (7) days before the scheduled hearing, without explanation. Having affirmatively and aggressively prosecuted its defense before the California Court on this issue, over many months, Noell Crane cannot now take the inconsistent position with this Court that the requested ruling by the California Court will somehow prejudice it, much less constitute irreparable harm.

### C.      Issuance of a Preliminary Injunction Will Irreparably Injure NCSI.

The more likely outcome is that issuance of a preliminary injunction would injure NCSI. It has expended resources litigating the indemnity action in California, which included participating in discovery and fully briefing the pending motion for summary judgment. It is currently expending resources on two fronts as Noell Crane has now brought this action to this Court only after the issue was fully briefed in California.

### D.      Noell Crane Will Not Likely Succeed on the Merits of its Claims.

In addition, for all the reasons set forth above, Noell Crane is not likely to succeed on the merits of its claim.

### E.      The Public Interest Does Not Favor Injunctive Relief.

Noell Crane's unexplained, and unexplainable, delay in invoking this Court's jurisdiction compels denial of all relief. As discussed above, awarding Noell Crane the relief it seeks would reward parties that delay in seeking a remedy and would not further the public interest. As

courts have long held, delay in seeking injunctive relief is in and of itself reason to deny the requested relief.  See, e.g., Krueger Int'l Inc. v. Nightingale Inc., 915 F. Supp. 595, 611-13 (S.D.N.Y. 1996) ("declin[ing] to manufacture a sense of urgency that is not supported by plaintiff's own conduct" when one of plaintiff's own executives saw one of defendant's prototypes nine (9) months before the Complaint was filed); Lanvin Inc. v. Colonia, Inc., 739 F. Supp. 182, 192 (S.D.N.Y. 1990) (denying motion for preliminary injunction and finding that moving party had waited over seven (7) months to file its motion for preliminary injunction); Cuddle Wit, Inc. v. Chan, No. 89 Civ. 7299 (JFK), 1989 U.S. Dist. LEXIS 14412 at *6 (S.D.N.Y. Dec. 1, 1989) ("Having concluded that plaintiff has sufficient knowledge of [defendant's] alleged infringements for no fewer than six months, the Court rules that its failure to seek injunctive relief prior to November 1, 1989 in great measure dissipates their assertion of irreparable harm."); Mathematica Policy Research Inc. v. Addison-Wesley Publ'g Co. Inc., No. 89 Civ. 3431 (JFK), 1989 U.S. Dist. LEXIS 6272 at *6 (S.D.N.Y. June 5, 1989) ("With this variety of information available to plaintiffs for no fewer than three and one-half months, their failure to seek injunctive relief prior to May 17, 1989 in great measure dissipates their assertion of irreparable harm."); Comic Strip, Inc. v. Fox Television Stations, 710 F. Supp. 976, 980-81 (S.D.N.Y. 1989) (denying plaintiff's motion for preliminary injunction when plaintiff waited seven (7) months after learning of alleged activity by defendant to file its action); Mego Corp. v. Mattel, Inc., No. 78 Civ 4447, 1978 U.S. Dist. LEXIS 15221 (S.D.N.Y. Sept. 29, 1978) (denying plaintiff's application for preliminary injunction because of delay in filing between spring and later that same year); see also Allen Organ, Co. v. CBS, Inc., No. 84 Civ. 3856 (SWK), 1986 U.S. Dist. LEXIS 26604 at *5 (S.D.N.Y. April 17, 1986) ("Allen's eight month delay in seeking relief is thus fatal to its request for a preliminary injunction, and the motion is denied."); House

of Hatten, Inc. v. Baby Togs, Inc., 668 F. Supp. 251, 258 (S.D.N.Y. 1987) ("Plaintiff's lack of

diligence in seeking judicial relief upon learning of defendant's activities mitigates against a

finding of irreparable harm."); Gianni Cereda Fabrics Inc. v. Bazaar Fabrics Inc., 335 F. Supp.

278, 280 (D.C.N.Y. 1971) (denying motion for preliminary injunction where "plaintiff knew of

the alleged infringement at least some seven and one-half months prior to the filing of this

action, yet took no steps to obtain relief").

## CONCLUSION

For these reasons, the Court should deny Noell Crane's Motion for Summary Judgment

or, in the alternative, a Preliminary Injunction and should grant NCSI's Motion to Dismiss or

Abstain.

**NOELL CRANE AND SERVICE, INC.**

By____/s/ R. Johan Conrod, Jr._____
Of Counsel

Stephen E. Story (VSB No. 22685)
sestory@kaufcan.com
R. Johan Conrod, Jr. (VSB No. 46765)
rjconrod@kaufcan.com
KAUFMAN & CANOLES, P.C.
Post Office Box 3037
Norfolk, VA 23514
(757) 624-3000
(757) 624-3169 Facsimile
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing is being filed with the Court's Electronic Filing System this 8th day of September 2009, which will send a Notice of Electronic Filing (NEF) to the following users:

> David L. Dayton, Esq.
> david.dayton@kpmlaw.com
> Kalbaugh, Pfund & Messersmith, P.C.
> 555 E. Main Street, Suite 1200
> Norfolk, VA 23510
> (757) 623-4500
> *Counsel for Plaintiff*

The undersigned is not aware of any non-filing users in this action.

> _____/s/ R. Johan Conrod, Jr._____
> Steven E. Story, Esq. (VSB No. 22685)
> sestory@kaufcan.com
> R. Johan Conrod, Jr., Esq. (VSB No. 46765)
> rjconrod@kaufcan.com
> KAUFMAN & CANOLES, P.C.
> Post Office Box 3037
> Norfolk, VA 23514
> (757) 624-3000
> (757) 624-3169 Facsimile
> *Counsel for Defendant*

1522159\2